UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| GURJEET SINGH, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5:26-CV-180-CHB |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| | ) | |
| WARDEN, CHRISTIAN COUNTY | ) | |
| JAIL, et al., | ) | |
| | ) | |
| Respondents. | ) | |

*** *** *** ***

This matter is before the Court on the Petitioner's Petition for Writ of Habeas Corpus, [R. 1], and Motion for Temporary Restraining Order, [R. 3]. The respondents have filed a response, [R. 9], and Petitioner replied. [R. 12]. For the reasons set forth herein, the Court will deny the petition in part, grant the petition in part, and order Petitioner's immediate release.

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)).  In seeking habeas relief, the petitioner bears the burden of proving by a preponderance of the evidence that his or her detention is unlawful.  *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

In the present case, Petitioner challenges his continued detention and alleges violations of his Fifth Amendment right to substantive due process (Count I); his Fifth Amendment right to procedural due process (Count II); the Administrative Procedure Act ("APA") (Count III); his Fifth

1

Amendment right to equal protection (Count IV); and the Suspension Clause of the United States Constitution (Count V). [R. 1, pp. 15–22]. The Court addresses each in turn.

## I.      Counts I, IV, and V

The Court first turns to Counts I, IV, and V. As for these claims, Petitioner alleges that he has been erroneously detained without a bond hearing since June 3, 2026, pursuant to 8 U.S.C. § 1225. *Id.* From the best the Court can tell, he alleges that this inability to receive a bond hearing violates his due process rights under the Fifth Amendment (Count I) and the Equal Protection Clause of the Fifth Amendment (Count IV). He also appears to allege that, if he cannot receive a bond hearing, he must be permitted to proceed with his petition for habeas relief, and if not, it violates the Suspension Clause (Count V).

However, Respondents contend that Petitioner is and has been detained under 8 U.S.C. § 1226 and is therefore entitled to a bond hearing pursuant to the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), which was issued prior to Petitioner's detention. The record, however, does not reflect that Petitioner has exhausted the available administrative remedies even though Petitioner's arrest and detention occurred after *Lopez-Campos*, and Respondents concede that 8 U.S.C. § 1226(a) applies to Petitioner. That is, Petitioner has never requested a bond hearing before an immigration judge. The Court must therefore consider whether Petitioner should exhaust these administrative remedies prior to seeking habeas relief.

To determine whether prudential exhaustion should be required, courts within this circuit have applied the three-factor test, as set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). *See Lopez-Campos v. Raycraft*, 797 F. Supp. 771, 778 (E.D. Mich. Aug. 29, 2025). Under that test, prudential exhaustion may be required when:

(1)      agency expertise makes agency consideration necessary to generate a proper

2

record and reach a proper decision;
(2)    relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
(3)    administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-CV-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Since the Sixth Circuit issued its decision in *Lopez-Campos*, Respondents have indicated their commitment to apply that law and provide bond hearings to detainees like Petitioner, who are detained under § 1226. And on the current record, there is nothing to suggest that administrative review of the controlling legal question of whether Petitioner is entitled to bond would not result in an agency decision consistent with that law. Therefore, exhaustion is not futile in this case, at least regarding Counts I and IV, Petitioner must exhaust his administrative remedies by seeking a custody redetermination hearing before an immigration judge. The Court will therefore deny the petition as to Counts I, IV, and V.

### II.    Count III

Regarding Count III, Petitioner's APA claim, the law is clear that such claims should be severed from his habeas corpus claims and dismissed without prejudice. *See J.O.B. v. United States*, No. 3:23-cv-217, 2024 WL 4011825, at *8 (S.D. Ohio Aug. 30, 2024); *Cox v. Nord*, No. 1:23-cv-324, 2023 WL 5917523, at *1 (S.D. Ohio Aug. 24, 2023); *Winburn v. Gidley*, No. 2:18-CV-10271, 2018 WL 783489, at *2 (E.D. Mich. Feb. 7, 2018). Accordingly, the Court will severe that claim from this petition and dismiss it without prejudice.

### III.    Count II

Having resolved Counts I, III, IV, and V, the Court turns to Plaintiff's Count II, in which he alleges that his Fifth Amendment due process rights have been violated because he was not provided with adequate notice or an opportunity to be heard prior to the revocation of his release on

recognizance. [R. 1, pp. 16–17]. On this point, the parties do not disagree that Petitioner first entered the United States on or around March 31, 2023, without inspection, but soon thereafter, the Department of Homeland Security released him on an Order of Release on Recognizance. *See, e.g.*, [R. 9, p. 2], [R. 12, p. 5]. That Order of Release on Recognizance has not been filed in the record; however, the respondents do not contest that Petitioner was released on his own recognizance. [R. 9, p. 2]. Moreover, other documents in the record indicate that Petitioner was released on his own recognizance on April 3, 2023. *See, e.g.* [R. 9-1, p. 3 (noting that, on April 3, 2023, Petitioner "was released on OREC"); [R. 9-4 (cancelling "the most current Order of Release on Recognizance" issued to Petitioner)]. On June 3, 2026, Petitioner was arrested by Enforcement and Removal Operations officers. *See* [R. 9-1, p. 2].

On that same day, Petitioner was provided with a memorandum with the subject "Cancellation of Form I-220A," which provided, in full,

> This memo is to document that [Immigration and Customs Enforcement] cancelled the most current Order of Release on Recognizance (Form I-220A) issued to [Petitioner] for the reasons stated in Form I-213, dated June 3, 2026. This memo has been created because the Form I-220A is not immediately available to complete and serves as notice of cancelling on the date listed below [May 19, 2026] in lieu of complete the cancellation portion of the form itself.[1]

[R. 9-4]. The Form I-213 (dated June 4, 2026) acknowledges that Petitioner was released on his own recognizance on April 3, 2023, but it does not state any reason as to why the Order of Release on Recognizance was cancelled, nor does it state that the order was cancelled or revoked. [R. 9-1].

Petitioner argues that, due to his release on recognizance, he possessed a substantial liberty interest in remaining on release, and as a result, his "re-detention without a pre-deprivation hearing violated due process." [R. 1, p. 17]. Specifically, he takes issue with "Respondents re-detain[ing]

---

[1] It is the Court's understanding that a Form I-220A typically includes a section at the bottom for "Cancellation of Order," allowing the appropriate immigration office to cancel the form if "[t]he alien failed to comply with the conditions of release," or "was taken into custody for removal."

4

him no advance notice, no written explanation of the justification for re-detention, and no opportunity to contest his re-detention before a neutral adjudicator." *Id.* In response, Respondents wholly fail to address this specific due process claim, and they instead spending the bulk of their brief arguing that "a bond hearing on the merits was available to [Petitioner] from the inception of his detention," and he has failed to "avail[] himself of that process." [R. 9, p. 7]; *see also id.* at 3–10. While this argument might be relevant to Plaintiff's other claims, it ignores the crux of Petitioner's claim under Count II, i.e., that he was entitled to certain procedural protections, such as notice and an opportunity to be heard, *before* his order of release was cancelled and he was detained. The Court therefore finds that the Respondents have waived their arguments as to Count II. *See England v. Perkins*, No. 1:21-CV-00048-GNS, 2022 WL 2195207, at *6 (W.D. Ky. June 17, 2022) (finding that the failure to respond to an argument amounts to a waiver (citation omitted)). Regardless, for the reasons stated below, the Court finds it appropriate to grant the petition as to this claim.

As an initial matter, the Court notes that Petitioner was released on his own recognizance under § 1226 of the Immigration and Nationality Act and its implementing regulations, a fact the Respondents do not dispute. Such release on recognizance "is understood to be a conditional parole." *Patel v. Tindall*, 810 F. Supp. 3d 824, 832 (W.D. Ky. 2025) (citation omitted). Specifically, it is considered to be a conditional parole under § 1226(a). *Id.*; *see also Singh v. Noem*, 824 F. Supp.3d 1197, 1212 (D.N.M. 2026); *Resendiz v. Noem*, No. 4:25-CV-00159-GNS, 2025 WL 3527284, at *3 (W.D. Ky. Dec. 9, 2025); *Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *4 (W.D. Ky. Nov. 20, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *6 (E.D. Cal. Sep. 18, 2025). That provision provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed," and the Attorney General may choose to continue that detention, release the alien on bond, or grant conditional parole. 8 U.S.C. § 1226(a). "To be released on conditional parole, there must be a finding that that the immigrant does not pose

a risk of flight or danger to the community." *Espinoza*, 2025 WL 2675785, at *6 (citing *Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)); *see also* 8 C.F.R. § 1236.1(c)(8). However, "[t]he attorney general at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b); *see also* 8 C.F.R. § 1236.1(c)(9). Nevertheless, "courts have consistently held that the Due Process Clause mandates that noncitizens who are released on their own recognizance . . . are entitled to some process before being re-detained." *Khabaza v. United States Immigration and Customs Enforcement*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *5 (S.D.N.Y. Nov. 25, 2025).

In determining whether a civil detention violates a detainee's due process rights, the Court applies the three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Khabaza*, 2025 WL 3281514, at *5. Under that framework, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Regarding the first factor, the Court finds that Petitioner has a significant private interest in remaining free from detention, and Respondents do not dispute this. As other courts have explained, a noncitizen

> has a significant liberty interest in remaining out of custody pursuant to his conditional parole. . . . Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates an implicit promise upon which that individual may rely, that their liberty will be revoked only if [they] fail[] to live up to the . . . conditions of release."

*Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (quoting *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)) (citation modified); *see also*

*Salinas*, 2025 WL 3243837, at \*3 (finding that the petitioner, who has been previously released on her own recognizance before being re-detained, had a significant private interest in not being detained). "The more than two years that [Petitioner] has spent out of custody since ICE initially released [him] have only heightened [his] liberty interest in remaining out of detention." *Pinchi*, 792 F. Supp. 3d at 1034 (considering this issue in the context of injunctive relief and the likelihood of succeeding on the merits). This first factor therefore weighs in Petitioner's favor.

The Court next considers the risks of an erroneous deprivation of this liberty interest. In similar cases, where the petitioner had previously been released on conditional parole under § 1226, district courts have found that "the risk of an erroneous deprivation of [the liberty interest] is high" where the petitioner's "parole was revoked without . . . giving [him] an opportunity to be heard." *Faizyan*, 2025 WL 3208844, at \*7 (quoting *Gonazalez Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at \*4 (S.D. Cal. Nov. 3, 2025)) (internal quotation marks omitted). That is, "there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing" because "neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for [Petitioner's] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). Such detention (i.e., civil immigration detention) "is permissible only to prevent flight or protect against danger to the community." *Id.* (citation omitted). But here, Petitioner was released on conditional parole, which required a finding that he was not a flight risk nor a danger to the community. *See, e.g.*, *Espinoza*, 2025 WL 2675785, at \*6. The respondents do not argue, and the record does not indicate, that any circumstances have changed (such that Petitioner would now be a flight risk or a danger to the community), or that his current detention in any way serves either purpose. "Under these circumstances, there is a significant risk that" Petitioner's detention, even if brief, "[is] not justified by any valid interest." *Pinchi*, 792 F. Supp. 3d at 1035. This second factor therefore weighs in

7

Petitioner's favor. *See, e.g.*, *Khabaza*, 2025 WL 3281514, at *7; *Salinas,* 2025 WL 3243837, at *3.

Finally, the Court considers the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Again, the respondents do not address any of the *Mathews* factors, so they have not identified any government interest for the Court to consider. And while they argue that Petitioner need only request a bond hearing to receive one, they do not explain what government interest is served in providing a bond hearing *after* revoking Petitioner's conditional parole, rather than providing a *pre*-detention opportunity to be heard. *See Pinchi*, 792 F. Supp. 3d 1025 (considering similar arguments). Respondents have likewise failed to explain how the cost of providing these protections would be fiscally or administratively onerous. Indeed, "custody hearings [in immigration court] are routine and impose a minimal cost." *Id.* (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)) (cleaned up); *see also Salinas*, 2025 WL 3243837, at *3. This third factor therefore weighs in Petitioner's favor.

Thus, each of the three *Mathews* factors weighs in Petitioner's favor. The Court therefore finds that, under the specific facts of this case and without any substantive response from the respondents as to this issue, Petitioner's detention without a pre-deprivation hearing violates his due process rights. Because a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty," *E.A.T-B v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), the Court will order Petitioner's immediately release. *See, e.g.*, *Faizyan*, 2025 WL 3208844, at *8 (ordering immediate release under the same conditions as preexisting conditional parole); *Salinas*, 2025 WL 3243837, at *4–5 (finding immediate release was appropriate). The Court will therefore grant the petition as to Count II and will order Petitioner's immediate release.

Accordingly, the Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus, [**R. 1**], is **DENIED IN PART** and **GRANTED IN PART**.

   a. The Petition is **DENIED** as to Counts I, IV, and V.

   b. The Petition is **GRANTED** as to Count II.

2. Petitioner's claim arising under the APA (Count III) is **SEVERED** from his petition and **DISMISSED WITHOUT PREJUDICE**.

3. Respondents are **ORDERED** to release Petitioner forthwith from custody and are further **ORDERED** to certify compliance with the Court's order by filing a notice of compliance **no later than July 22, 2026**. Upon receipt of said notice, the Court will enter an order and judgment terminating this case.

4. Petitioner's Motion for Temporary Restraining Order, [**R. 3**], is **DENIED as moot**.

   This the 20th day of July, 2026.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY